**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SOHEIL MEHRPOUR,

Petitioner,

v.

KRISTI NOEM, Secretary of the
Department of Homeland Security, et. al.,

Respondents.

Case No.:  26-cv-0339-BJC-VET

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**

**BACKGROUND**

Petitioner Soheil Mehrpour, a citizen of Iran, entered the United States in 1991 and overstayed his visa.  ECF No. 1-2, Mehrpour Decl. ¶ 1; ECF No. 5-5, Cole Decl. ¶ 6.  He was granted voluntary departure but returned to the United States, when Mexico would not accept him.  *Id*., ¶ 2; ECF No. 5-5, ¶¶ 8, 9. In 2005, Petitioner received a conviction for violation of 18 U.S.C. § 922(g)(5) and was sentenced to time served.  *Id*., ¶ 3; ECF No. 5-5, ¶ 11.  Thereafter, he was placed in removal proceedings and ordered removed on March 10, 2008.  *Id*. ¶ 4; ECF No. 5-1 at 2.[1]  On June 26, 2008, Petitioner was released on

---

[1] Page numbers refer to those generated by the Court's CM/ECF system.

supervision with conditions, including "regularly" reporting in person to the local Immigration and Customs Enforcement ("ICE") office. *Id*. ¶ 4; ECF No. 5-4 at 2. Petitioner believes he may have missed a check-in appointment in 2011 and 2013, but his supervision was not revoked at the time. *Id*. ¶ 6. On January 8, 2026, ICE took Petitioner into custody when he arrived for his check-in appointment. *Id*. ¶ 8; ECF No. 5-2 at 2.

Petitioner filed the instant Petition for a Writ of Habeas Corpus and a motion for a temporary restraining order on January 20, 2026. ECF Nos. 1, 2. This Court set a briefing schedule on January 23, 2026. ECF No. 3. Respondent filed a return to the petition on January 29, 2026, and Petitioner filed a traverse on February 2, 2026. ECF Nos. 5, 6.

## LEGAL STANDARD

Courts may grant habeas corpus relief to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *see also Hamdi v. Rumsfeld,* 542 U.S. 507, 525, 124 S. Ct. 2633, 2644, 159 L. Ed. 2d 578 (2004) ("[T]he writ of habeas corpus remains available to every individual detained within the United States."). Courts are authorized to grant writs pursuant to § 2241 to noncitizens in custody in violation of the Constitution or laws or treaties of the United States. *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999).

## DISCUSSION

Petitioner asserts ICE failed to comply with its own regulations and violated his due process rights when they re-detained him. ECF No. 1 at 9-11. He further asserts his detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8. U.S.C. § 1231. *Id*. at 14-17. Petitioner also asserts ICE cannot remove him to a third country without adequate notice and an opportunity to be heard. *Id*. at 17-21. He requests the Court order his immediate release, enjoin Respondents from re-detaining him unless they obtain travel documents, comply with applicable statutory and regulatory procedures, and provide process that includes written notice and a meaningful opportunity to raise a fear-based claim for Convention Against Torture protection. *Id*. at 21-22.

Respondents argue, in opposition, that they provided Petitioner notice and an

26-cv-0339-BJC-VET

informal interview as required by the regulations.  ECF No. 5 at 3-4.  They further argue they have rebutted any showing that there is no significant likelihood of removal to Iran in the reasonably foreseeable future, and they are not seeking to remove him to a third country.  *Id*. at 4-9.

## I.  Revocation of Petitioner's Release on Supervision

Petitioner contends ICE failed to meaningfully notify him of the reasons for his re-detention "upon revocation" of his release as required by applicable regulations.  ECF No. 1 at 11.   He maintains the Notice of Revocation stated that there were changed circumstances, but the ICE officer never said what has changed since ICE was unable to deport him in 2008.  *Id*.   Additionally, Petitioner argues ICE's explanation that they revoked his supervision because he failed to appear for a check-in thirteen years ago is not credible.  *Id*. at 11-12.

Respondents argue Petitioner was provided a written Notice of Revocation of Release and an informal interview as required.  They also contend the notice explained that Petitioner's "history of missed appointments" was a violation of his release on supervision.  ECF No. 5 at 3.  Respondents further contend the notice explains ICE determined it can execute his order of removal to Iran, which is something it could not do before.  *Id*.

In reply, Petitioner argues the notice he received did not include the information that ICE can remove him now due to recent success executing removal orders, and it did not include the statistics of removal to Iran that Respondents provide in their return.  ECF  No. 6 at 3.  He further argues that the fact he knew that ICE revoked his release does not satisfy the requirement that ICE explain the reason for the revocation.  *Id*. at 4.  Petitioner also argues Respondents fail to provide evidence of his missed ICE appointments and fail to explain why they waited 13 years to revoke his release based on the violation of missed check-ins.

A federal agency must follow its own regulations and procedures.  *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974).  The revocation of release of noncitizens subject to a final removal order is governed by 8 C.F.R. §§ 241.4, 241.13.  Upon revocation of release, the

3

noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4, 241.13; *see also Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (Listing cases that held "§ 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

Petitioner was provided with a Notice of Revocation of Release on the day he was taken into custody, which informed him that his supervision was revoked based upon "changed circumstances in [his] case" and that ICE determined it can "expeditiously" remove Petitioner form the United States. ECF No. 5-2 at 2. This vague language did not include what circumstances changed that allowed ICE to be able to remove Petitioner now, when they were unable to do so following his order of removal in 2008. The notice also stated Petitioner had a history of missing ICE appointments. However, there was no information provided regarding the missed appointments. Furthermore, if the missed appointments were from 2013, there is no explanation as to why this violation was not addressed for many years.

Even assuming the notice sufficiently provided Petitioner with the reasons for the revocation as required, the interview given the same day failed to meet the requirements. Petitioner was interviewed on the same day that he received the notice and was taken into custody, and the interviewing officer indicates Petitioner did not provide a written statement or documents during the interview. Conducting the interview on the same day Petitioner was detained without any advance notice and no opportunity to obtain documents or provide a thorough written response denies Petitioner the ability to meaningfully respond to the reasons for his revocation. *See Hagos v. Noem*, 26-CV-150-JES-DEB, 2026 WL 202873, at *3 (S.D. Cal. Jan. 27, 2026). The Court finds Respondents failed to comply with statutory process and violated Petitioner's due process rights when revoking Petitioner's release.

## II. Petitioner's Detention

Petitioner maintains his removal period under *Zadvydas* expired in June 2008.  ECF No. 1 at 15.  He contends there is good reason to believe he will not be removed in the reasonably foreseeable future because ICE has had eighteen years to deport him and has proven unable to do so.  *Id*. at 17.  Petitioner argues he should be released unless the government can prove there is a significant likelihood of removal in the reasonably foreseeable future.  *Id*.

Respondents argue ICE re-detained Petitioner following the increased ability and success in removing Iranian nationals to Iran. ECF No. 5 at 6.  Respondents maintain ICE has removed 135 Iranian nationals to Iran in fiscal year 2025 as compared to 27 in fiscal year 2024.  *Id*.  They further maintain ICE has been working expeditiously to execute Petitioner's removal order, including gathering the documents and biographical information necessary to submit a travel document request.  *Id*.  Respondents argue the facts do not support Petitioner will be detained for an unreasonably lengthy amount of time, in light of the success in executing orders of removal to Iran and its efforts to obtain Petitioner's travel documents.  *Id*.

In reply, Petitioner argues his removal is not "significantly likely" given that Respondents have not submitted a request for a travel document to their internal headquarters or to Iran. ECF No. 6 at 4.  Additionally, Petitioner argues good faith efforts to secure a travel document do not themselves satisfy *Zadvydas*.  *Id*. at 6.

Pursuant to § 1231, non-citizens subject to a final order of removal must be detained during the removal period.  8 U.S.C. § 1231(a)(1)(A).  The removal period is the ninety days within which the Attorney General must remove an individual ordered removed.  *Id*. The removal period begins on the latest of the following dates: "(i) [t]he date the order of removal becomes administratively final; (ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. §1231(a)(1)(B).

26-cv-0339-BJC-VET

Petitioner's removal period began on March 10, 2008, the date of the immigration judge's order of removal and waiver of appeal. *See* ECF No. 5-1 at 2. The presumptively reasonable period recognized by the Supreme Court in *Zadvydas* has passed. 533 U.S. at 701. If Petitioner demonstrates "there is no significant likelihood of removal in the reasonably foreseeable future," Respondents must rebut that showing for the detention to remain reasonable. *Id*.

As noted by Petitioner, ICE has not removed him in the eighteen years since his order of removal became final. This supports that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents attempt to rebut this showing through their contention that removals to Iran are happening more frequently now than in the past, and indicate ICE is "gathering the documents and biographical information necessary to submit a travel document request" and expect to submit one in the "next few weeks." ECF No. 5 at 6. ICE has yet to submit a request and, without a timetable on how long requests take once submitted, Respondents fail to demonstrate his removal is likely to occur in the reasonably foreseeable future. Furthermore, Respondents' "expeditious" work to effect Petitioner's removal does not demonstrate Petitioner's removal is likely to occur in the reasonably foreseeable future. *See Zadydas* 533 U.S. at 702 (Rejecting the argument that continued detention is lawful "as long as good faith efforts to effectuate deportation continue."). As such, Respondents fail to rebut the presumption that Petitioner's removal is not likely to occur in the reasonably foreseeable future. Petitioner's ongoing detention is unreasonable and not authorized by statute. Petitioner, therefore, is entitled to release under *Zadvydas*.

## III.  Removal to a Third Country

Petitioner contends ICE's policies regarding removal to a third country violate the Fifth Amendment, the Convention Against Torture and applicable regulations. However, following Respondents contention that they are not seeking to remove him to a third country, Petitioner reserves the right to renew this argument if Respondents change their position on this issue. Accordingly, the Court denies this claim as moot.

26-cv-0339-BJC-VET

Based on the foregoing, the Court ORDERS:

1. The petition for writ of habeas corpus is GRANTED.

2. Respondents shall immediately release Petitioner under the previously determined conditions.

3. Respondents are ENJOINED from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal.

4. Respondents are ENJOINED from re-detaining Petitioner without first following the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

5. The petition is DENIED as to the remaining requests for relief.

6. Petitioner's motion for a temporary restraining order is DENIED as moot.

7. The Clerk of Court shall close this matter.

**IT IS SO ORDERED**.

Dated:  February 13, 2026

Honorable Benjamin J. Cheeks
United States District Judge

26-cv-0339-BJC-VET